1

Beth K. Findsen (023205)
Law Office of Beth K. Findsen, PLLC
7279 East Adobe Drive, Suite 120
Scottsdale, AZ 85255
(480) 584-6664
beth@findsenlaw.com
*Attorney for Plaintiffs*

2

3

4

5

6

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

7

8

| | |
|---|---|
| HUGH GERALD BUFFINGTON, AND TERRY L. BEHRENS | No.  2:14-CV-00615-SRB |
| Plaintiffs, | |
| v. | |
| U.S. BANK, NATIONAL ASSOCIATION as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-4N; OCWEN LOAN SERVICING, LLC; ONEWEST BANK, F.S.B, INDYMAC MORTGAGE SERVICES, a Division of OneWest; and DOES 1-1000, | MOTION FOR SANCTIONS FOR TERMINATING DEPOSITION AND TO COMPEL A NEW RULE 30(B)(6) DEPOSITION (Honorable Susan R. Bolton) |
| Defendants. | |

9

10

11

12

13

14

15

16

17

18

19

        With no legal justification, after just twenty-six minutes, Defense counsel and the

20

deponent stormed out of the 30(b)(6) deposition of Defendant,  U.S. BANK, NATIONAL

21

ASSOCIATION as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates,

22

Series 2007-4N.   Much of the twenty-six minutes was spent wrangling with obstructive

23

Defense counsel.

24

        Defense counsel (or "Piccuta") became upset when Plaintiff's counsel (or

25

26

"Findsen") asked the Deponent if she brought documents responsive to the Notice of

27

Deposition.  Piccuta had notice of the documents requested for more than ten days, and

28

-1-

never moved for a protective order, and made no proposal to Findsen to voluntarily restrict the scope of the deposition.

Instead, as though pre-planned, Piccuta instructed the deponent not to answer the question of whether she brought any documents in response to the Notice of Deposition. Not only this, counsel instructed the witness not to answer any more questions but to simply leave.

Plaintiffs seek sanctions from Defendant and Defense Counsel for Defendant's improper termination of the deposition, including attorney's fees and costs for preparing and attending the deposition.  In addition, Plaintiffs seek to compel the testimony of an appropriate corporate representative of U.S. Bank, prior to the Preliminary Injunction Hearing, currently scheduled for June 19, 2014.

## I.    Pertinent Background Procedure and Facts

### 1.    The Court's Hearing on Preliminary Injunction Continued

At a hearing held May 12, 2014, the Court granted Plaintiffs' Motion to Continue the Preliminary Injunction Hearing to June 19, 2014.  (Dkt. 23)  The TRO was extended and the Court required that Plaintiffs post an additional bond of $2,000.00 on or before June 3, 2014.

Also, the parties discussed scheduling matters for the Preliminary Injunction hearing, including the availability of discovery before the June 19, 2014 hearing.  Defense counsel asked to depose the Plaintiffs.  Plaintiffs agreed but asked to depose one 30(b)(6) witness.  Consequently, the Court ordered that "upon request of counsel," "counsel may

conduct discovery limited to the scheduling of Plaintiffs' depositions and a 30(b)(6) witness." (Dkt. 23).

2. **Notice of Deposition Filed**

On May 13, 2014, Plaintiffs filed a Notice of Deposition for a Rule 30(b)(6) witness from U.S. Bank, National Association as Trustee for the Lehman XS Trust 2007-4N ("U.S. Bank"), the purported beneficial title holder of Plaintiffs' Deed of Trust. (Dkt. 24). U.S. Bank was chosen because U.S. Bank is the party that the Defendants currently claim to be the beneficial title holder of Plaintiffs' Deed of Trust, and the "Investor."

The Notice set forth the designated areas of testimony for the 30(b)(6) witness, and also requested that the witness bring specified documents, if existing. In essence, the Notice requested that the witness bring: (1) correspondence between party-defendants related to Plaintiffs' loan; (2) documents evidencing U.S. Bank's (the Deponent) ownership interest in the Note or Deed of Trust; (3) payments given or received by U.S. Bank on Plaintiffs' Note or Deed of Trust. (Dkt. 24, Dkt. 26).

3. **Communications for Scheduling and Possible Stipulated Postponement of Trustee Sale**

At the same time, Findsen conferred with Piccuta, via phone, email, and correspondence, about the designation of the witness, the logistics, the date, the time, and other circumstances regarding the deposition. (Findsen Decl. ¶4). The parties exchanged offers for a stipulation to postpone the trustee's sale and vacate the Preliminary Injunction Hearing, but no agreement was reached. (Findsen Decl. ¶3).

On May 19, 2014, Findsen filed an Amended Notice of Deposition to reflect a new date and location. (Dkt. 26). Piccuta had requested the date of May 22, 2014, for his

1   witness and had agreed to produce her in Phoenix.  The Amended Notice did not change

2   any of the areas of testimony or documents requested.

3           It was not until the day before the Deposition that Piccuta even stated an objection

4   to the Notice of Deposition, or its contents.  On Wednesday, May 21, at 12:37 PM, Findsen

5   emailed Piccuta to ask for the name of the actual witness being designated and produced.

6   (Findsen Decl. ¶2, Ex.A).   In response, a name was provided, and Defendant indicated

7   displeasure with the Notice of Deposition, which had been on file in substantially the same

8   form for nine days, "we did not agree to produce documents, nor did the court authorize

9   this."  (Findsen Decl. ¶2, Ex.A).

10          Findsen responded, "Regarding the documents, because of the upcoming PI hearing

11  and the court order, we have bypassed Rule 26 for the purpose of the injunction

12  hearing.  This is a deposition of a party, so we can attach a request for production to the

13  Notice and it is treated as a RFP.  As you know, the judge has granted expedited discovery

14  because of the swift timetable for the PI hearing.  Also, the active complaint is the FAVC,

15  and the "substantial likelihood of success on the merits" of each live claim is at issue in the

16  PI.  The relevance standard will hew to the claims."   (Findsen Decl. ¶2, Ex. A)

17          Piccuta did not ask for protection or move for a protective order, but stated he would

18  "comply with the order of the court and what Judge Bolton explicitly stated at the hearing."

19  Misconstruing the burden, he invited Plaintiffs to "take it up with the court," if she had

20  trouble with the "parameters set forth by the Court."  (Findsen Decl. ¶2, Ex. A)  But the

21  Order was fine and Findsen had no problem with the parameters that Plaintiffs could take a

22  30(b)(6) deposition and Defendants could take Plaintiffs' depositions.

-4-

4.    **Defense Counsel Instructs Witness to Not Answer Any Questions and Terminates the Deposition After Twenty-Six Minutes**

Instead, on May 22, 2014, at the Deposition, Piccuta decided to obstruct and abort the entire deposition after only twenty-six minutes.  After a series of uneventful preliminary questions, when Findsen asked a simple question about whether Deponent brought any documents responsive to the requests in the Notice of Deposition, Piccuta raised his voice to object, not allowing the witness to answer.  (A Copy of the Transcript of the Rule 30(b)(6) Deposition of U.S. Bank, National Association as Trustee for Lehman XS Mortgage Pass-Through Certificates, Series 2007-4N is attached hereto as Exhibit 1, hereinafter "Transcript" or "Tr.")

> BY MS. FINDSEN:
> Q.· ·Have you seen this document before?
> A.· ·Yes, ma'am.
> Q.· ·And this is a notice of deposition --
> A.· ·Yes.
> Q.· ·-- for your appearance here today?
> A.· ·Yes, it is.
> Q.· ·And do you -- let's turn to page 2 and the first
> paragraph.··Have you brought me any documents that
> correspond to this paragraph?
>
> MR. PICCUTA:··And I'm going to go on the record
> and say this was addressed yesterday.··I explained to
> Ms. Findsen that we won't be producing any documents today
> because, pursuant to Judge Bolton's order at the last  preliminary injunction hearing,
> there was no agreement or
> order saying that document production would occur.··The
> only thing that was allowed pursuant to that order was the
> deposition of the PMK as well as two depositions of both
> plaintiffs.
>
> MS. FINDSEN:··Okay.
>
> MR. PICCUTA:··So the answer to that question is
> no; there are no documents, and you know that because you

don't have any –

MS. FINDSEN:··Well, your objection's noted, but
this is a 30(B)(6) deposition. . .

(Tr. 14-15)

Rather than note his objection and let the witness respond "no," or answer any other

questions, Piccuta insisted that the deposition be halted to call the Court.  Plaintiff

suggested that instead of calling the Court, that the parties just stipulate that she did not

bring anything or let the witness answer the question that she did not bring anything.  (Tr.

18:19-25).   Even after the attempt to call Judge Bolton was a failure, Piccuta was not

content to carry on the deposition.  Piccuta insisted that he was allowed to abort the entire

deposition based upon his objection that the Notice asked for documents, and that he

unilaterally had decided that the "scope" of the deposition was to be "narrowly tailored" by

his own interpretation.

Through some prior-decided objective, Piccuta insisted that the deposition be

abruptly terminated.  The tone had been pleasant and there had been no objection to any

question up to this point.  Moreover, there had been no protective order requested or

granted.  Piccuta had not suggested an agreeable "scope" of deposition, despite his

rehearsed-sounding statements.  His purpose was clear--- terminate the deposition without

allowing the witness to be questioned on anything.

MR. PICCUTA:··And I'll do one better than that.
We'll adjourn the deposition and –

(Tr. 21:8-9).

MR. PICCUTA:··I am ending the deposition.

1
2
> MS. FINDSEN:··I'm going to depose -- I'm going
> to depose this witness about Ocwen and about the other
> issues.

3
4
5
6
> MR. PICCUTA:··No, you're not.··I'm instructing
> my client not to answer any of your questions until we
> have an order from the court outlining the scope of
> today's deposition of what you are allowed to question
> about.

7
(Tr.22:10-18).

8
Plaintiffs did not agree that the deposition could be or should be adjourned:

9
10
11
> MS. FINDSEN: I'm not adjourning this deposition.  I'm just going to find out what
> the witness knows, but let me just say that I want to preserve my objection and the
> right to. . to discuss the effects and whether there should be any sanctions for failure
> to bring documentation in response to the notice.

12
13
(Tr. 21:2-7).

14
> MS. FINDSEN:··No, I don't agree to adjourn.

15
(Tr. 21:25)

16
17
18
19
> MS. FINDSEN:··I don't agree to adjourn the
> deposition, though.··Just for the record, Mr. Piccuta is
> walking out with the witness.··We have lots of areas that
> we have no dispute about, and he is not allowing me to
> question the witness on the areas of -- that we have –

20
(Tr. 23:1-5)

21
22
At one point, already in the process of gathering belongings and walking out,

23
Piccuta paused to discuss the scope.  Plaintiffs' position was that all areas relevant to the

24
preliminary injunction were relevant to this deposition.  One main area was the "substantial

25
likelihood of success on the merits," which implicated the substantive claims in the First

26
Amended Complaint.  A second area was how U.S.Bank would be financially harmed by a

27
28

postponement of the trustee's sale, if wrongfully enjoined.  Piccuta really did not want to

reach a compromise; this was for show:

> MR. PICCUTA:··You're not deposing me, Beth.
> It's really simple.··We don't agree.··We're going go to
> the court and she'll issue an order, and she'll tell us
> what we can do and what we can't do.··If we need to get a
> discovery referee, we'll do that, too.··But what's not
> going to happen is, we're not going to continue today with
> you asking all these questions that are completely outside
> the scope of the original order issued by Judge Bolton.
> It's that simple.··That's our position.··I'm taking my
> client and I'm leaving.

> MS. FINDSEN:··There's no scope in the order.··It
> says I'm entitled to a 30(B)(6) deposition.··It's right
> here.··[As read]:··At the request of counsel, which was
> you, it is ordered counsel may conduct discovery limited
> to the scheduling of plaintiffs' deposition and a 30(B)(6)
> witness.
> ··· I'm not agreeing to this adjournment.

> MR. PICCUTA:··It's not an adjournment.··I'm
> leaving with my client over objection of plaintiffs'
> counsel.··I'm going to let Judge Bolton decide what the --
> what the repercussions are, if your area of questioning
> and what you're trying to do is appropriate.

> MS. FINDSEN:··It's your choice.

> MR. PICCUTA:··Yeah, absolutely, it is.

> MS. FINDSEN:··So, for the record, the deponent's
> left and counsel is about to leave, and we can go off
> record.

(Tr. 24-25).

**5.      Attempts to Meet and Confer Occurred Prior to and at the Deposition Pursuant to L.R. Civ. 7.2(j) and (k)**

The parties had numerous email and phone conversations about the scheduling of the depositions.  Before the U.S. Bank 30(b)(6) Deposition ("the Deposition"), the scope of the Notice of Deposition and the request for document production were not really discussed.  Defense counsel made one vague reference by telephone about the not producing documents, when the parties were discussing the possibility of a stipulated postponement of the Trustee's Sale.

It was not until the day before the Deposition that Defense counsel even stated an objection to the Notice of Deposition, or its contents.  On Wednesday, May 21,  Defendant indicated displeasure with the Notice of Deposition, which had been on file in substantially the same form for nine days, "we did not agree to produce documents, nor did the court authorize this."  (Findsen Decl. ¶2, Ex.A). Plaintiffs responded that documents could be requested of a party-deponent, and that the scope of the complaint was relevant because the "substantial likelihood of success on the merits" was at issue.  The amounts paid or received by U.S. Bank were relevant to their harm in being enjoined, for the bond requirement.   (Findsen Decl. ¶2, Ex. A)

Piccuta did not ask for protection or move for a protective order, but stated he would "comply with the order of the court and what Judge Bolton explicitly stated at the hearing." Misconstruing whose burden it would be to invite protection, he invited Plaintiffs to "take it up with the court," if she had trouble with the "parameters set forth by the Court." (Findsen Decl., Ex. A)  But the Order was fine and Plaintiffs' counsel had no problem with

the parameters that Plaintiffs could take a 30(b)(6) deposition and Defendants could take

Plaintiffs' depositions.

At the Deposition, Findsen agreed, despite reservations that the call would be an ill-advised interruption over discovery that the Court would dislike, to let Piccuta call the Court for an "outline the parameter's of today's deposition," even though Piccuta had not formerly moved for a protective order prior to everyone showing up at the deposition. (Tr. 20:1).  The parties recessed, and Piccuta called Judge Bolton on his cell phone.  The Court's staff advised the parties that the judge was unavailable to hear an immediate discovery dispute.  (Findsen Decl. ¶5; Tr. 19).

Findsen offered several times to continue the questioning on a limited basis, to question the witness on Ocwen issues, "find out what the witness knows," and to at least "find out what she knows about Ocwen."  (Tr. 18:14-17).  "I'm going to find out what the witness knows."(Tr. 21: 3). "I'm going to depose –I'm going to depose this witness about Ocwen and about the other issues." (Tr. 22: 11-13).  "We have lots of areas that we have no dispute about, and he is not allowing me to question the areas . . ." (Tr. 23:35).   This was despite Plaintiffs' concern that the witness was not a proper corporate representative designee of U.S. Bank, but rather, more of a professional witness for the new servicer, Ocwen.

After the Deposition was terminated abruptly, there has been no further conference about its scope.  Further discussion would be futile.  Piccuta made it clear that he wanted "to let Judge Bolton decide what the repercussions are." (Tr. 25:17-18).

## I.   TERMINATING A DEPOSITION AT COUNSEL'S WHIM  IS NOT TOLERATED

### 1.   There Were No Legitimate Grounds for Terminating the Deposition and Defense Counsel Showed Bad Faith in Leaving.

Defense counsel seems to think that the Federal Rules of Civil Procedure are for the other guy.  He left the deposition early, stating he would "let Judge Bolton decide what the – what the repercussions are . . ."  (Tr. 25:17-18).  Defendant did not move for a protective order before the deposition, during the deposition or after the deposition.  Defendant did not object to a single question before Plaintiffs' counsel asked if the deponent brought any documents responsive to the Notice of Deposition.

The only grounds to move to terminate or limit a deposition is if "it is being conducted in a manner evidencing bad faith, or to embarrass, annoy, or oppress the deponent." Fed.R.Civ.P. 30(d)(3); *Biovail Labs., Inc. v. Anchen Pharm., Inc.,* 233 F.R.D. 648 (C.D.Cal.2006)(Rule 30(d)(4) "is the only authority allowing the interruption of a deposition.").   A party should immediately seek to obtain a protective order by showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the witness or party.  Unless a sufficient showing of these grounds are made the motion will be denied.' " *Hearst/ABC-Viacom Entertainment Servs. v. Goodway Marketing, Inc.,* 145 F.R.D. 59, 62 (E.D.Pa.1992).

It is not the embarrassment or annoyance caused by unfavorable answers that is the controlling criterion but "the manner in which the interrogation is conducted that is the basis for refusing to proceed, **followed by the required motion to seek relief**." *In re Stratosphere Corp. Sec. Litig.,* 182 F.R.D. 614, 619 (D.Nev.1998). The motion may be

filed in the court where the action is pending or the deposition is being taken and if the party so demands, the deposition must be suspended for the time necessary to obtain an order. Fed.R.Civ.P. 30(d)(3) (A). The court may *then* order that the deposition be terminated or limit its scope and manner. *Id.* 30(d)(3)(B).

"[If] such a judicial determination *is not sought*, this Court will presume that there were not sufficient grounds for the objection and instruction not to answer, or the termination of the deposition, and that the action was undertaken merely to obstruct the discovery process." *In re Stratosphere,* 182 F.R.D. at 618–19.

Piccuta had knowledge of the contents of the Notice of Deposition for nine days, yet he sought no resolution, formal or informal.   Piccuta sought no relief until the deposition was occurring.  Then, his "relief sought" consisted of an insistence in calling the Court, and then walking out.  This violates the Federal Rules and shows bad faith.

### 2. Disagreements About "Scope" Are Not Grounds to Terminate a Deposition.

Piccuta claimed he was entitled to instruct the witness not to answer and to leave the deposition because he disagreed with the scope of the 30(b)(6) Notice and the request for production of documents.   Such an interpretation of the Federal Rules is unburdened by accuracy.

There was no scope provided in the Court's order, which merely allowed the depositions to be taken before they normally would, given the upcoming Preliminary Injunction Hearing.   (Minute Entry May 12, 2014, Dkt.23).

Ordinarily, depositions are only limited in scope by Federal Rule of Civil Procedure 26(b)(1), which states, "Parties may obtain discovery regarding any nonprivileged matter

that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."

Again, the only authority for allowing the interruption of a deposition is Rule 30(d)(4).  *Biovail*, 233 F.R.D. at 653.  In *Biovail*, the court ordered sanctions against counsel who "took it upon himself to unilaterally terminate the deposition," because such a tactic "contravenes the requirement that an application to terminate must be made to the court."  *Id.*  (citations omitted).   It is not the "prerogative of counsel, but of the court, to rule on objections."  *Biovail,* 233 F.R.D. at 653 *(*citations omitted).

*3.*        **Bad Faith Objections and Instructions Are Not Tolerated.**

Counsel is not even entitled to object obstructively:

**(2) *Objections*.** An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30.

Defense counsel "has a very limited role during the taking of a deposition" and is prohibited from . . .deciding which questions should be answered...." *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524, 526-27 (C.D. Cal. 2008). The interrogating counsel has the right to the deponent's answers, not an attorney's answers. *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998).

-13-

In *Tacori*, Magistrate Judge Chapman imposed sanctions against a defense attorney for objecting to almost every question during the deposition, making numerous speaking objections, and improperly terminating the deposition. *Tacori Enterprises v. Beverly Jewellery Co. Ltd.*, 253 F.R.D. 577, 582 (C.D. Cal. 2008).

As a result of the attorney's misconduct and improper termination of the deposition, the district court ordered that the deposition be resumed at a later date and ordered the defendant to reimburse the plaintiff's costs for the court reporter and interpreter used at the deposition. *Id.* The court also imposed sanctions under Rules 30(d)(3)(C) and Fed. R. Civ. P. 37(a)(5)(A). *Id.* at 579 n.3.

If Piccuta objected to the <u>entire deposition</u>, he should not have requested and agreed to depositions at the May 12, 2014 Hearing.  After the Court's Order was entered, and the Notice of Deposition filed, if he had such serious objections, he should have requested a stipulated protective order or moved for a protective order prior to the Deposition.   This was a pre-planned game that wasted everyone's time and effort.

An attorney cannot simply walk out of depositions that he does not like.  This is not the Rule.  This is a recipe for Rambo-style litigation anarchy.  There should be consequences for this willful disrespect of the legal process and everybody's time and effort.

## II.    THIS COURT HAS AMPLE POWER TO IMPOSE SANCTIONS

Rule 30(d)(2) says "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."

Fed. R. Civ. P. 30(d)(2), 28 U.S.C. § 1927, and the court's inherent power fully empower this Court to sanction attorney deposition misconduct. *Williams v. Rockwell Intern. Corp.*, Nos. 96-55339, 96-56317, 1997 WL 306456, at *3 (9th Cir. June 5, 1997) (affirming sanctions for deposition misconduct under all three); *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) (court may use its inherent power to impose sanctions for discovery abuses). "[A] district court has the inherent power to impose sanctions on counsel who willfully abuses judicial processes." *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983).

## III.   FEES AND COSTS ARE THE APPROPRIATE RELIEF

"District Courts have broad discretion in imposing discovery sanctions." *Ritchie v. United States*, 451 F.3d 1019, 1026 (9th Cir. 2006). If the violations are sufficiently egregious, the court  may preclude the offending party from introducing certain evidence, *Tacori*, 253 F.R.D. at 586, or even dismiss the case altogether. *Ritchie*, 451 F.3d at 1026. Less severe sanctions such as a monetary award are favored. *Id.* "Accordingly, monetary sanctions are the sanctions primarily available under" Rule 30(d)(2). *Biovail Laboratories, Inc. v. Anchen Pharmaceuticals, Inc.*, 233 F.R.D. 648, 653 (C.D. Cal. 2006). Further, section 1927 awards cost and fees incurred "arising from an attorney's unreasonable and vexatious conduct[.]" *Blodgett*, 709 F.2d at 610-611.

The *Biovail* court found that the plaintiff's attorney, after making numerous baseless objections, improperly ended the deposition. *Id.* at 654. Finding sufficient grounds to impose Rule 30(d) sanctions, the court instructed the defendant to file a declaration "setting forth the exact hours worked by, and the usual hourly fees of, counsel in preparing this

discovery motion, as well as proof of any costs incurred in the first deposition" in order to recover attorneys' fees to redress deposition misconduct. *Id.* The court also ordered the deponent and his attorney to pay the costs of the videographer and court reporter from the first deposition. *Id.* at 655. After granting the defendant's motion to compel a second deposition, the court further ordered the deponent and his attorney to pay "[t]he reasonable roundtrip coach airfare of defendant's counsel…and the reasonable costs of two nights lodging while in Los Angeles" for the deposition. *Id.*

Plaintiffs spent a lot of time preparing for the deposition of a corporate representative of U.S. Bank, with a short time frame.  Plaintiffs diligently prepared and arrived early to have the court reporter pre-mark the twenty-five exhibits, with courtesy binders for counsel.

Plaintiffs are entitled to the reasonable attorney's fees expended in preparing and attending the deposition, preparing this motion, and in preparing and attending any reconvened deposition.  In addition, Plaintiffs are entitled to receive costs and expenses, including the costs of the court reporter, the expedited transcript, the attorney's preparation time, and the administrative preparation and copying costs of the exhibit binders.  Upon this Court's directive, Plaintiffs will submit an affidavit of fees and costs if so required.

IV.    **A NEW DEPOSITION SHOULD BE SCHEDULED**

Plaintiffs also request a timely 30(b)(6) deposition responsive to the Notice of Deposition filed May 13, 2014 before the hearing scheduled for June 19, 2014.  If more than one witness is the person with the most knowledge of the areas specified for U.S. Bank, than more than one person should be designated.

-16-

1

2   In the alternative, if the deposition is not reconvened, Defendants U.S. Bank and

3   Ocwen should be prohibited from introducing any evidence responsive to the areas of

4   testimony specified in the Notice of Deposition, including either's ownership of the Note

5   or Deed of Trust.

6   RESPECTFULLY SUBMITTED this 29th day of May, 2014.

7                                          **LAW OFFICES OF BETH K. FINDSEN, PLLC**

8                                          /s/Beth K. Findsen
                                           Beth K. Findsen (023205)
9                                          *Attorney for Plaintiffs*

10

11                                 **CERTIFICATE OF CONFERENCE**

12
    I hereby certify, pursuant to L.R. Civ. 7.2(j), that I attempted to satisfactorily resolve the
13  matter prior to bringing this motion by the actions described in  pp. 9-10 of this
    Memorandum, and in my accompanying Declaration.
14

15  By: /s/ Beth K. Findsen

16                                     **CERTIFICATE OF SERVICE**

17
         I hereby certify that on May 29, 2014, I electronically transmitted the attached
18  document to the Clerk's Office using the ECR System for filing in Arizona District Court,
    and a copy was automatically emailed to all counsel of record.
19

20  By: /s/ Beth K. Findsen

21

22

23

24

25

26

27

28