Beth K. Findsen (023205)
Law Office of Beth K. Findsen, PLLC
7279 East Adobe Drive, Suite 120
Scottsdale, AZ 85255
(480) 584-6664
beth@findsenlaw.com
*Attorney for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| HUGH GERALD BUFFINGTON, AND TERRY L. BEHRENS<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BANK, NATIONAL ASSOCIATION as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-4N; OCWEN LOAN SERVICING, LLC; ONEWEST BANK, F.S.B, INDYMAC MORTGAGE SERVICES, a Division of OneWest; and DOES 1-1000,<br><br>Defendants. | No. 2:14-CV-00615-SRB<br><br><br><br>**PLAINTIFFS' PRE-TRIAL BRIEF FOR PRELIMINARY INJUNCTION**<br><br><br><br>(Honorable Susan R. Bolton) |

Pursuant to Fed. R. Civ. P. 65, Plaintiffs file this pre-trial brief on the security provisions of Rule 65(c), in support of their request for a preliminary injunction enjoining the trustee's sale on their home until threshold issues regarding title, and false recorded documents can be litigated. This Pre-Trial Brief is supported by the separately filed Declarations of : (1) Hugh Gerald Buffington; (2) Terry L. Behrens; and (3) Marc James Findsen.

## SUMMARY

In short, Plaintiffs ask that no bond, or a nominal bond be ordered, as they have already paid $5,000.00 in security, and this amount is more than sufficient to

secure the foreclosing party's interest risked by the injunction, especially since the real property is still available as adequate collateral for the trustee's sale, in the event the injunction later is determined to be unwarranted. If further bond is ordered, it should not exceed Defendants' possible harm, including the loss of use of sale proceeds at the current market interest rates that Defendant U.S. Bank is willing to extend to its saver-customers. Moreover, rental value of the Subject Property is approximately $620/month, therefore, the $5,000 already paid well exceeds eight months of "rent," even if that were the proper measure, which it is not, because the proper measure is to secure the Defendant against the harm it can prove it will suffer by the delay.

## LEGAL STANDARD

Rule 65(c) provides that, if a court issues an injunction, the Court should review whether security should be given by the party seeking the injunction:

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper ***to pay the costs and damages sustained*** by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. P. 65(c). The proper consideration is whether the defendant being enjoined is likely to sustain damage or costs. It is not whether the plaintiffs are afforded an accidental benefit. Thus, the accurate measure is *harm to these defendants*, not some speculative benefit to plaintiffs.

The district court has ample discretion to decide whether to impose a security requirement on the party seeking the injunction, and how much. *Barahona–Gomez v. Reno,* 167 F.3d 1228, 1237(9th Cir.1999).

The district court can choose to dispense with the security requirement, or

to "request nominal security," especially where requiring security would "effectively deny access to judicial review." *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency,* 766 F.2d 1319, 1325 (9th Cir.1985) (finding proper the district court's exercise of discretion in allowing environmental group to proceed without posting a bond), *amended on other grounds,* 775 F.2d 998 (9th Cir.); *Barahona–Gomez,* 167 F.3d at 1237 (determining $1,000 bond in class action not to be an abuse of discretion in light of the showing that "the vast majority of aliens[affected by class action] were very poor").

# LEGAL ARGUMENT

A. **U.S. Bank and Ocwen Cannot Meet Their Burden of Showing Damage From Postponement of Trustee Sale**

　1.　**Burden is on Defendants**

The burden is on the party seeking security to demonstrate harm to that party from the injunction. *International Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006) ("the burden is on the party seeking security to establish a rational basis for the amount of the proposed bond") (citing *Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*, 990 F. Supp. 119, 140 (E.D.N.Y. 1997)).

　2.　**Bond is Prospective, Not Retrospective**

A bond is prospective and does not cover past expenses. The purpose is to provide security for the time period of the injunction going forward. *Scanvec Amiable Ltd. v. Chang*, 2002 WL 32341772, at *2 - 3 (E.D. Pa. Nov. 1, 2002), *aff'd,* 80 Fed. Appx. 171, 2003 WL 22597067 (3d Cir. 2003)(referring to a bond for an injunction as a bond that "only provides potential recourse for damages that might occur after the bond is posted," and is not based upon "any alleged injury th[at] might have occurred prior to its posting."). The *Scanvec* court determined the amount of the bond by looking solely to the prospective projected damages—

explicitly holding that the amount of the bond would not cover what it called "Category 2" and "Category 3" damages—which the restrained defendant claimed it had already sustained before the posting of the bond. The Third Circuit affirmed. 80 Fed. Appx. at 174 – 75. *See also Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1464 (M.D.N.C. 1996).

### 3. **Defendants Have No Damages**

Defendants have made no showing to satisfy their burden of demonstrating damage from the postponement of the sale. The only damages they have complained of are speculative and unproven damages, which occurred in the past, not during the pendency of the contemplated injunction. Regarding the supposed new servicer, Ocwen, Defendants speculate, with no supporting evidence, "Defendants will be forced to further advance monies for taxes and insurance with respect to the Property" and that "granting of a preliminary injunction will likely extend this frivolous litigation causing Defendants to incur tens of thousands of additional costs in attorney's fees." (Dkt. 17, 12:25-28; 13:1-2). Defendants omit to factor in that they have increased their own attorney's fees by refusing to stipulate to a proposed postponement.

On the other hand, Plaintiffs have significant irreparable harm if the injunction is effectively prohibited by an artificially high bond. Plaintiffs lose their due process rights to assert claims and defenses to an illegal trustee's sale under A.R.S. §33-811(c). Plaintiffs have already had to pay exorbitant amounts of court fees, attorney's fees, and other costs, especially considering that they are financially distressed consumer litigants. In addition, Plaintiffs will lose their family home, which is unique, real property, and not compensable by ordinary money damages.

### 4. **U.S. Bank Witness Walked Out of Deposition Without Demonstrating Harm; U.S. Bank is Prohibited From Introducing Evidence of Harm Now**

What is more, Defendant had the opportunity to provide evidence of harm

to U.S. Bank, the claimed beneficiary, at the deposition of its corporate representative. (Dkt. 27). Instead, Defendant walked out of the deposition, claiming that such evidence was irrelevant to the preliminary injunction. (Dkt. 27, 27-2). Consequently, U.S. Bank should be estopped and prohibited from introducing such evidence at the preliminary injunction hearing.

B. **Defendants' Damages Properly Are Limited to Postponed Use of Sale Proceeds.**

In the past, Defendants immediately attempted to resell the Subject Property post-trustee-sale. (M. Findsen Decl. ¶¶13-16). Here, the injunction merely prevents the immediate sale and possible resale of the property, for a period of months. The Subject Property can still be sold if the sale is determined to have been "wrongfully enjoined." Therefore, the Defendants' only real harm is the loss of interest on the immediate sale proceeds.

Even an ambitious look at U.S. Bank's (if U.S. Bank is found to be a valid beneficiary of the Deed of Trust) possible loss from the postponement of a trustee's sale, would reveal that the postponement is only costing it the use of or interest from whatever money it is entitled to from the sale, for a limited time. When OneWest listed the house for sale after the prior illegal trustee's sale, it listed the home for $263,900. (M. Findsen Decl. ¶13). The Subject Property is still available for sale in the future, with a current market value of approximately $357, 237.00, if the water problem was repaired, and the condition was sellable. (M. Findsen Decl. ¶18).

The Board of Governors of the Federal Reserve System posted the one-year Treasury Bill rate on June 16, 2014 as .09%. (M. Findsen Decl. ¶ 33). If the property sold for $357,237and no real estate commission or other expenses were added in, the treasury yield would be $26.79 per month or $321.51 per year. (M. Findsen Decl. ¶33).

1
2
3
4
5
6
7
8

U. S. Bank provides its interest rate offerings on its official web site. The highest rate indicated would be the "Elite rate" of .015%. (M. Findsen Decl. ¶35). This would lower the monthly amount foregone by the loss of the use of $357,237.00 in sales proceeds from a purported Trustee's Sale to $4.47/month or $53.59 per year. (M. Findsen Decl. ¶35). Thus, if U.S. Bank were paid the same interest rate that it pays its "elite savers" on $357,237.00, it would receive an extra $53.59/year. From the $5,000.00 already paid by the Plaintiffs, they have posted bond sufficient to cover ninety-three years of interest income.

9
10

C.   The **Subject Property Plus $5,000 Already Posted Sufficiently Secures Defendants Against Conceivable Harm From Postponement.**

11
12
13
14
15
16
17

Plaintiffs have insured the house, and maintained it better than the servicer did during the term of the wrongful foreclosure sale. (Behrens Decl. ¶38, Buffington Decl. ¶¶28-30, ¶33, First Amended Verified Complaint). Plaintiffs paid the $3,000.00 Bond the same day it was ordered, April 18, 2014. (Dkt. 16). Plaintiffs also paid the additional $2,000.00 several days before the deadline ordered by the Court. (Dkt. 25). Plaintiffs have shown good faith and a willingness to provide adequate security.

18
19
20
21
22
23
24
25
26
27
28

In addition, the collateral itself is sufficient security, especially when coupled with the $5,000.00 already paid as bond by the Plaintiffs. *Martenson v. RG Fin.*, No. 09-CV-1314-PHX-NVW, 2010 WL 334648 (D. Ariz. Jan. 22, 2010). In *Martenson*, the District Court granted a preliminary injunction to protect a homeowner against eviction, requiring only a nominal bond of $100.00 "because Defendants are more than fully secured by the Property. *See* Fed.R.Civ.P. 65(c)." *Id.*   *See also Citibank N.A. v. Nyland Ltd.*, 705 F.Supp. 188, 190 (S.D.N.Y. 1989)(security in mortgage foreclosure is the property and no bond is needed); *Zinni v. M&I Bank*, 2010 WL 537723 at *2 (D. Ariz. Feb. 12, 2010)(No additional security is required under Rule 65(c), Fed.R.Civ.P., as the property is the security). So it is here.

The market value of the Subject Property appears to be increasing. (M. Findsen Decl. ¶18). But even if value declined, Defendants cannot recover for any speculative decline in market value of the real property because that is not a legal basis for requiring a bond.

In *Omaha Hotel Co. v. Kountze*, 107 U.S. 378, 392 (1883), the Supreme Court stated that "we greatly doubt" whether "depreciation in market value can ever be laid as cause of legal damages on a bond in error." In *Ripka v. Philco Corp.*, 65 F. Supp. 21, 39 (S.D.N.Y. 1945), the Court refused to consider depreciation in market value of stock pending an appeal an element of "damages for delay." Other courts similarly have held that it is improper to include fair market value depreciation in calculating whether a bond should be required, the amount of a bond, or the recovery under a bond. *In re Ridgemont Apartment Associates*, 127 B.R. 934, 940 (N.D. Ga. 1991) ("federal jurists have confirmed that market value depreciation is not recoverable at law."); *United States v. Mansion House Ctr.*, 682 F. Supp. 446, 450 (E.D. Mo. 1988) (citing *Kountze* and *Ripka* for the proposition that a bond does not protect against market decline, and "[t]he Court has not found any case law to the contrary").

In the interest of protecting the real property, Plaintiffs have purchased an insurance policy. (Behrens Decl. ¶45). They are living in the home and keeping it well maintained; the collateral is preserved for an eventual sale if Ocwen or U.S. Bank are found to have been "wrongfully enjoined." They have already paid a $5,000.00 bond. (Dkt. 16, Dkt. 25). These factors are more than sufficient to secure the Defendants' claimed interest.

D.  **The Rental Value is $620/Month Based Upon the Market Area, and the Cost to Obtain Adequate Water Supply**

The Rental Value of the Subject Property is approximately $1,200/month, if an adequate water supply were available. But it is not. The well drilling

-7-

performed by the trespasser was negligent, and the well is doomed to run dry. Moreover, it does not currently support average household needs, shutting off if the dishwasher and shower run at the same time. (Behrens Decl. ¶40, ¶41, ¶42, ¶44). The cost to provide water through a temporary pump is $580/month. (Behrens Decl. ¶42). The cost for a semi-permanent annual fix to the problem is $3,200.00. (Behrens Decl. ¶41) Therefore, the Rental Value declines to $620/month ($1,200.00 minus $620.00).

## CONCLUSION

The Temporary Restraining Order should be converted to a Preliminary Injunction, to preserve the Plaintiffs' interest in the title of Real Property, and to preserve Plaintiffs' rights to assert claims and defenses to the Trustee's Sale, without conditioning the continuance of the injunction upon the posting of any additional bond. Plaintiffs have already provided sufficient security to protect Defendants' interest.

RESPECTFULLY SUBMITTED this 18th day of June, 2014.

**LAW OFFICES OF BETH K. FINDSEN, PLLC**

/s/Beth K. Findsen
Beth K. Findsen (023205)
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2014, I electronically transmitted the attached document to the Clerk's Office using the ECR System for filing in Arizona District Court, and a copy was automatically emailed to all counsel of record.

By: /s/ Beth K. Findsen