IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hugh Gerald Buffington, et al., | No. CV-14-00615-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| U.S. Bank NA, et al., | |
| Defendants. | |

This matter is before the Court on Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 33). Plaintiffs have filed a Response in Opposition (Doc. 54) and Defendants have filed a Reply (Doc. 57). In addition, Plaintiffs filed a Notice of Legal Authority (Doc. 61) regarding the Arizona Supreme Court's denial of review of the Arizona Court of Appeals decision in *Steinberger v. McVey ex rel. County of Maricopa,* 234 Ariz. 125, 318 P.3d 419 (App. 2014), a decision relied on by Plaintiffs to support some of their causes of action. For the reasons set forth below, the motion will be granted in part and denied in part.[1]

**I. Background**

Plaintiffs initiated this action on March 25, 2014 by filing a *pro se* Verified Complaint (Doc. 1). Two days later, they filed a Motion for Preliminary Injunction (Doc.

---

[1] Defendants have requested oral argument. The Court denies the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed.R.Civ.P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

3) to enjoin Defendants from selling at a trustee sale residential property that Plaintiffs claim belongs to them.  After service was executed upon Defendants, the Honorable Susan R. Bolton, the previously assigned judge, held a hearing on April 18, 2014 at which she entered a Temporary Restraining Order prohibiting the sale of the property through May 12, 2014 and setting a preliminary injunction hearing on that date.  (Doc. 15).  On May 12, 2014, counsel for Plaintiffs entered an appearance and Plaintiffs filed a First Amended Verified Complaint ("Amended Complaint") (Doc. 20).  In addition, Plaintiffs moved to continue the preliminary injunction hearing. (Doc. 22).  Judge Bolton granted Plaintiffs' motion to continue and re-set the hearing for June 19, 2014.  (Doc. 23).  The hearing took place on June 19, 2014, after which Judge Bolton granted a preliminary injunction, which remains in place. (Docs. 49, 59).

Plaintiffs allege in the Amended Complaint that after purchasing the property at 39824 North Third Street, Phoenix, Arizona 85056 (the "Subject Property") in 2002, they refinanced in 2006 and signed a promissory note (the "Note") to borrow $495,000.00. (Doc. 20 at 4).  The Deed of Trust recorded in 2006 pursuant to the refinancing contained a legal description that differed from the original Warranty Deed recorded in 2002. (*Id.* at 4-5).  The legal description in the Deed of Trust did not describe the Subject Property and instead pertained to a different piece of property owned by Plaintiffs that was unrelated to this transaction. (*Id.*).  Plaintiffs contend, therefore, that the Deed of Trust never legally encumbered the Subject Property. (Doc. 20 at 5).  Plaintiffs did not become aware of this error until years later.

In 2009, Plaintiffs inquired about a loan modification. (Doc. 20 at 6).  Plaintiffs engaged the services of an organization, Foundation of Credit Excellence, to assist them with the loan modification process. (*Id.* at 7).  Still current on their payments, Plaintiffs completed a modification application with the loan servicer on August 1, 2009. (*Id.*).  In September 2009, they received a Trial Period Plan pursuant to which they were required to make three monthly payments. (*Id.*)  Upon completion of the payments, they would receive a modification agreement. (*Id.*).  Despite making the three payments as directed,

Plaintiffs received notices in January 2010 indicating they were in breach of the loan. (Doc. 20 at 7-8). When they contacted the loan servicer, a representative told them not to worry and that the notices were automatically generated because the computer system did not reflect the Trial Period Plan under which they were making payments. (*Id.*). Meanwhile, on December 29, 2009, Plaintiffs received a modification agreement containing the terms of a permanent modification which they could, and did, accept by signing and returning the agreement before January 23, 2010. (*Id.* at 8). A January 5, 2010 letter from the loan servicer, however, claimed they were in default and that foreclosure proceedings would be initiated if they failed to cure the default. (*Id.*).

On January 28, 2010, the loan servicer sent a second loan modification agreement, claiming the first had a clerical error. (Doc. 20 at 9). The second agreement, however, contained significantly worse terms. (*Id.*). Plaintiffs reluctantly agreed to the new terms because of the notices of default they had been receiving. (*Id.*). Despite agreeing to the terms of the second modification agreement and making several requests for a signed copy, Plaintiffs claim they never received a signed agreement from the lender, which was required for the modification to take effect. (*Id.*). Plaintiffs allege they were "relentlessly dual-tracked," which they claim refers to the process of a lender moving forward with foreclosure despite the borrowers' pursuit of a loan modification. (Doc. 20 at 10).

Plaintiffs further allege that, although the purported current holder of the Note is not the original lender identified in the Note, the Note and Deed of Trust were never properly transferred. (Doc. 20 at 10-13). As a result, according to Plaintiffs, "[t]here are at least three conflicting claims to the Note and Deed of Trust, which subject the Plaintiffs to the potential of quadruple liability for the Note and Deed of Trust." (Doc. 20 at 13). Plaintiffs contend that no assignments or transfer documents pertaining to the Deed of Trust were recorded between July 2006 and September 2010. (*Id.*). Plaintiffs further contend that as of August 25, 2013, the Note shows a zero balance. (*Id.*).

On September 9, 2010, an Assignment of Deed of Trust was executed, although it was not recorded until January 12, 2011. (Doc. 20 at 15). Pursuant to the assignment,

1  the Deed of Trust and the Note were transferred to OneWest Bank, FSB ("OneWest")
2  from the original lender and beneficiary identified in the Deed of Trust.  (*Id*.).

3        On September 22, 2010, a Notice of Substitution of Trustee was recorded in which
4  OneWest was identified as the new beneficiary of the Deed of Trust (as opposed to the
5  original beneficiary identified in the Deed of Trust itself).  (Doc. 20 at 14).  Plaintiffs
6  further assert that a Notice of Trustee Sale was recorded on the same day indicating that
7  by order of the beneficiary, OneWest, the property identified in the Deed of Trust was to
8  be sold at public auction. (Doc. 20 at 14).  Plaintiffs allege this Notice was false because
9  1) Defendant OneWest was never properly made the beneficiary of record; nor was it the
10 lender under the Deed of Trust or the note holder as described in the Note, and 2) the
11 Deed of Trust did not encumber or describe the property that was being sold.  (*Id.*).  The
12 Subject Property was then allegedly sold at a trustee's sale on January 6, 2011, after
13 which a Trustee's Deed Upon Sale was recorded.  (Doc. 20 at 14-15).  Relying on
14 OneWest's representations of a valid trustee's sale, Plaintiffs agreed to, and did, move out
15 of their home on or before February 2, 2011.  (Doc. 20 at 15).

16       A second Notice of Substitution of Trustee was recorded on September 12, 2011
17 in which OneWest was again identified as the beneficiary under the Deed of Trust.  (Doc.
18 20 at 15).  Plaintiffs allege OneWest was again erroneously identified as the beneficiary
19 in that it had gained no interest in the Deed of Trust from the original beneficiary
20 "because there was none to give."  (*Id.*)  Plaintiffs base this allegation on the fact that the
21 Deed of Trust contained the wrong property description.  (*Id.*).  Thus, according to
22 Plaintiffs, the original beneficiary did not transfer, and OneWest did not receive, an
23 interest in the Subject Property.  (*Id.*).

24       Also on September 12, 2011, a Cancellation of Trustee Sale was recorded.  (Doc.
25 20 at 16).  Simultaneously, an "Affidavit of Trustee's Sale and Erroneous Recording of
26 Trustee's Deed Upon Sale" was recorded, purporting to nullify the Trustee's Deed Upon
27 Sale recorded on January 6, 2011, and stating that the Deed of Trust recorded back in
28 2006 was still valid.  (*Id.*).  Plaintiffs allege that the trustee who recorded these

documents breached the Deed of Trust because he was not a lawful trustee and because the recordings were unauthorized and violated his duty to Plaintiffs. (*Id.*). Plaintiffs allege they were not informed of the erroneous trustee's sale. (*Id.*).

Plaintiffs allege that on October 25, 2011, a forged Deed of Trust was recorded to correct the legal description. (*Id.*). Plaintiffs claim that a new legal description was attached to the original Deed of Trust and it was re-recorded without their knowledge or consent. (*Id.*). Plaintiffs claim their signatures from the original Deed of Trust were left on the re-recorded Deed of Trust, without their permission, to make it appear as though the re-recorded Deed of Trust was properly signed. (*Id.*).

A second Assignment of Deed of Trust was recorded on March 28, 2012. (Doc. 20 at 16). In the assignment, OneWest, identified as the holder of the Deed of Trust, transferred the Deed of Trust and the Note to "U.S. Bank National Association, as trustee for the LXS 2007-4N" ("U.S. Bank"). (*Id.*).

On January 8, 2013, a second Notice of Trustee's Sale was recorded. (Doc. 20 at 17). The notice states that pursuant to the Deed of Trust recorded in 2006, and "rerecorded on October 25, 2011," the Subject Property is to be sold at public auction. (*Id.*). Plaintiffs allege that this second notice is "false and void." (*Id.*). They claim that Defendant Ocwen Loan Servicing, LLC ("Ocwen") is now attempting to sell the Subject Property pursuant to this second Notice of Trustee's Sale. (*Id.*).

Plaintiffs allege that between January 6, 2011, the date of the first trustee's sale, and September 9, 2011, the date the first trustee's sale was cancelled, OneWest "pretended to own Plaintiffs' home" and trespassed on the property. (Doc. 20 at 17). Plaintiffs allege OneWest dug a shallow well and allowed the property to fall into disrepair. (*Id.*). Plaintiffs claim they were never notified that the first trustee's sale was invalid and that they still owned the Subject Property. (*Id.* at 18).

Based on these underlying facts, Plaintiffs allege nine causes of action. In Count One, Plaintiffs allege Negligence Per Se against Defendants OneWest, U.S. Bank, and

Ocwen.[2] They allege that by causing and allowing several documents containing false information to be recorded, Defendants OneWest, U.S. Bank, and Ocwen violated certain Arizona statutes. (Doc. 20 at 22-24). Plaintiffs claim that Defendants' acts in violation of the statutes constitute negligence per se.

In Count Two, Plaintiffs allege Negligent Performance of Undertaking (Good Samaritan Doctrine) against Defendant OneWest. (Doc. 20 at 24-28). In support of this claim, Plaintiffs contend Defendant provided false information to, and misled, Plaintiffs regarding their loan modification, including telling Plaintiffs to default as a condition for modification, and pursuing foreclosure during the modification process. Plaintiffs claim that "[a]s a result of the deceitful representations to Plaintiff[s] by OneWest, Plaintiffs suffered foreclosure recordings on their real property title record, additional credit damage, suffered additional late fees and penalties on their loan, and suffered attorney's fees and costs." (Doc. 20 at 27).

In Count Three, Plaintiffs allege violations of Arizona Revised Statutes ("A.R.S.") § 33-420(A), which prohibits the recording of a document that is "forged, groundless, contains a material misstatement or false claim or is otherwise invalid." (Doc. 20 at 28-32). Plaintiffs allege that several recorded documents pertaining to the Deed of Trust and the Note violated the statute. Plaintiffs allege that Defendants OneWest, U.S. Bank and Ocwen, and their agents, prepared, recorded and failed to correct the documents at issue. Plaintiffs allege the falsely recorded documents were material because they deprived Plaintiffs of their reasonable choices.

In Count Four, Plaintiffs identify their cause of action as "Payment/Discharge/Satisfaction." (Doc. 20 at 33). Based on information and belief, Plaintiffs contend the Note and Deed of Trust are not in default and, consequently, any foreclosure proceeding is improper and should be cancelled. (*Id.*). Plaintiffs allege that

---

[2] They also allege Count One (and other counts) against "Perry and Sherman, acting as agents of OneWest, U.S. Bank, and Ocwen." Christopher Perry, though identified in the body of the Amended Complaint, is not a named defendant. As for Defendant Jason Sherman, nothing in the record shows he was ever served.

1  because the Note has been paid by other sources, their obligation under the Note is
2  discharged and the Deed of Trust should be released.

3  In Count Five, Plaintiffs allege Breach of Contract against Defendants OneWest,
4  U.S. Bank and Ocwen.  (Doc. 20 at 35-36).  Plaintiffs allege Defendants breached the
5  terms of the Note and Deed of Trust by pursuing a trustee's sale without complying with
6  the foreclosure procedures set forth therein.  Plaintiffs allege that Defendants' breaches
7  have caused them "damages in the form of attempted wrongful foreclosure of their home,
8  substantial damage to credit, attorney's fees and costs, imminent danger of quadruple
9  liability on the Note and Deed of Trust, and other damages."  (Doc. 20 at 36).

10  In Count Six, Plaintiffs allege Breach of Contract against Defendant OneWest
11  based on its violation of the first loan modification agreement.  Plaintiffs contend they
12  accepted the loan modification offer and met all conditions precedent.  They claim
13  Defendant breached the agreement by sending the second modification agreement rather
14  than comply with the terms of the first.  Plaintiffs claim they were damaged in that they
15  did not obtain the benefits of the first agreement.

16  In Count Seven, Plaintiffs allege Fraud against Defendants OneWest, U.S. Bank
17  and Ocwen based on the re-recorded Deed of Trust that was purportedly signed by
18  Plaintiffs. (Doc. 20 at 37-38).  Plaintiffs allege the fraud was furthered when Defendants
19  subsequently attempted to hold a trustee's sale on the fraudulently re-recorded Deed of
20  Trust.

21  In Count Eight, Plaintiffs allege Trespass to Real Property against Defendant
22  OneWest.  (Doc. 20 at 39).  Plaintiffs allege that despite knowing or having reason to
23  know that the Subject Property was still owned by Plaintiffs, OneWest and its agents
24  went on the property, without Plaintiffs' permission, and drilled a well that was
25  insufficient for supplying water to the property.  Plaintiffs contend the value of the
26  property has been diminished as a result of the trespass.

27  Lastly, in Count Nine, Plaintiffs allege violations of the Fair Debt Collection
28  Practices Act ("FDCPA") against Defendant Ocwen.  (Doc. 20 at 39-41).  Plaintiffs

allege Ocwen, which began servicing Plaintiffs' Note in September 2013, well after the Note was alleged to be in default, acted as a debt collector under the FDCPA and engaged in improper debt collection practices.

For relief, Plaintiffs seek compensatory, consequential, statutory and punitive damages. (Doc. 20 at 41-43). Plaintiffs also seek declaratory and injunctive relief, along with attorney's fees and costs.

**II. Discussion**

**A.    Legal Standards for Failure to State a Claim Under Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint must contain a "short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). The Rule 8 standard reflects a presumption against rejecting complaints for failure to state a claim and, therefore, motions seeking such relief are disfavored and rarely granted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). Rule 8, however, requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint need not contain detailed factual allegations to avoid a Rule 12(b)(6) dismissal; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation omitted).

In addition, the Court must interpret the facts alleged in the complaint in the light most favorable to the plaintiff, while also accepting all well-pleaded factual allegations as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 129 S.Ct. at 1949. A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

When considering a motion to dismiss, a district court "'consider[s] only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)). Here, the Court will consider the exhibits Plaintiff has attached to the Amended Complaint, including copies of the Note, Deed of Trust, and numerous other recorded documents pertaining thereto. *See id.*

### B. Count One – Negligence Per Se

Plaintiffs allege negligence per se in Count One based on their contention that Defendants OneWest, U.S. Bank, and Ocwen caused and allowed several documents containing false information to be recorded in violation of three Arizona statutes, § 39-161, § 13-2320(A)(4) and § 33-420(A), (E). Under Arizona law, "a claim for negligence per se must be based on a statute enacted 'for the protection and safety of the public.'" *Steinberger v. McVey*, 234 Ariz. 125, 139, 318 P.3d 419, 433 (App. 2014), *review denied* (Sept. 23, 2014) (quoting *Good v. City of Glendale*, 150 Ariz. 218, 221, 722 P.2d 386, 389 (App. 1986)). In *Steinberger*, the Arizona Court of Appeals considered one of the three statutes at issue here, A.R.S. § 39-161, and concluded that because it is a criminal statute, "it was enacted for the protection and safety of the public." *Id.* (citing *Good*, 150 Ariz. At 221, 722 P.2d at 389). The Court further determined that the plaintiff fell within

the class of persons the statute was intended to protect, that is "anyone who is adversely affected by a cloud on the title due to the recording of a false instrument." *Steinberger*, 234 Ariz. at 139, 318 P.3d at 433. In addition, the Court adopted the standard of conduct in the statute as a proper negligence standard. *Id.* at 140, 318 P.3d at 434.

Defendants address only the re-recorded Deed of Trust in seeking dismissal of Count One and make no mention of other recorded documents referenced in Count One that Plaintiffs claim violated the statutes. Defendants argue the negligence per se claim fails because they did not violate any of the referenced statutes when they re-recorded the Deed of Trust with the correct legal description. Defendants, however, fail to point to any legal authority that authorizes what they did here, which was to unilaterally, without Plaintiffs' knowledge or consent, attach a new property description to the Deed of Trust and re-record it more than four years after the original Deed of Trust was recorded. Defendants cite four Arizona cases to support their argument that they were allowed to re-record the Deed of Trust to correct the legal description. (Doc. 33 at 9). All of those cases, however, were at the summary judgment stage where the factual record was more fully developed. Moreover, as Defendants conceded at the preliminary injunction hearing before Judge Bolton, they are aware of no Arizona statutory or case law that permits unilateral modification and re-recording of a deed of trust for the purpose of correcting a legal description, as was done here. (Doc. 59 at 32-33).[3]

The Court finds that Plaintiffs' allegations pled in Count One, like those in *Steinberger,* are sufficient to state a claim for negligence per se based on violations of A.R.S. § 39-161. Additionally, because A.R.S. § 13-2320(A)(4) and § 33-420(E) are also criminal statutes and contain language analogous to § 39-161, the Court finds that alleged

---

[3] Also at the preliminary injunction hearing, Judge Bolton raised the issue of whether the re-recorded Deed of Trust, which purportedly corrected the original Deed of Trust, is itself valid given that two separate legal descriptions are attached to it. (Doc. 59 at 33-40). Rather than substitute the correct legal description for the incorrect one, the person who submitted the re-recorded Deed of Trust simply attached both legal descriptions to it. (Doc. 59 at 36-37). As Judge Bolton recognized, Defendants "have no right to take security on two pieces of property, but [they] recorded a document that says [they] have it." (Doc. 59 at 39).

- 10 -

violations of those statutes may also form the basis for negligence per se claims. Plaintiffs' allegations are sufficient to state negligence per se claims under those statutes as well. Accordingly, Defendants' request to dismiss Count One will be denied.

### C. Count Two – Negligent Performance of Undertaking

Defendants concede that in *Steinberger*, the Court allowed a claim for Negligent Performance of Undertaking, also known as the Good Samaritan Doctrine, to proceed. Defendants claim, however, that the "*Steinberger* court held that the Good Samaritan Doctrine applied to the negligent administration of the loan modification based upon the **facts presented in that case only.**" (Doc. 33 at 10) (emphasis in original). They argue that Plaintiffs' allegations here fail to state a claim under that doctrine. The Court disagrees.

"Under [the] 'Good Samaritan Doctrine,' a party may be liable for negligent performance of an assumed duty by either: (1) increasing the risk of harm to another, or (2) causing another to suffer harm because he or she relied on the party exercising reasonable care in undertaking the duty." *Steinberger,* 234 Ariz. at 137, 318 P.3d at 431. Liability under this doctrine includes economic harm as well as physical harm. *Id.* (citing *McCutcheon v. Hill*, 147 Ariz. 401, 404, 710 P.2d 1056, 1059 (1985)). As applied to a mortgage loan, the *Steinberger* court held that "a lender may be liable under the Good Samaritan Doctrine when: (1) a lender, or its agent/representative, induces a borrower to default on his or her loan by promising a loan modification if he or she defaults; (2) the borrower, in reliance on the promise to modify the loan, subsequently defaults on the loan; (3) after the borrower defaults, the lender or its agent/representative negligently processes or fails to process the loan modification, or due to the lender/agent/representative's negligence, the borrower is not granted a loan modification; and (4) based on the default, the lender subsequently forecloses on the borrower's property." *Steinberger,* 234 Ariz. at 138, 318 P.3d at 432.

Plaintiffs contend Defendant OneWest undertook the loan modification program and had a duty to act with reasonable care in administering it. They allege Defendant

- 11 -

1  falsely told them that to obtain a modification they had to stop making payments, which
2  they did.  They further allege Defendant failed to execute the two modification
3  agreements provided to Plaintiffs and instead initiated foreclosure proceedings.  Plaintiffs
4  claim that "[a]s a result of the deceitful representations to Plaintiff[s] by OneWest,
5  Plaintiffs suffered foreclosure recordings on their real property title record, additional
6  credit damage, suffered additional late fees and penalties on their loan, and suffered
7  attorney's fees and costs."  (Doc. 20 at 27).  The Court finds Plaintiffs' allegations are
8  sufficient to state a claim for Negligent Performance of Undertaking/Good Samaritan
9  Doctrine.  Defendants' request to dismiss Count Two will be denied.

### D.  Count Three – False Documents

Plaintiffs' claim in Count Three is similar to Count One in that they are alleging violations of an Arizona statute, § 33-420(A), that prohibits the recording of a document that is "forged, groundless, contains a material misstatement or false claim or is otherwise invalid."  Instead of alleging negligence per se pursuant to violations of criminal statutes, however, Plaintiffs allege in Count Three a direct violation of a statute that imposes civil liability.  Plaintiffs allege that Defendants and their agents prepared, recorded and failed to correct several documents pertaining to the Deed of Trust and the Note that violated the statute.

Defendants argue Count Three should be dismissed for the same reasons as Count One.  They contend that "the re-recording of a deed of trust with the correct legal description is not a violation of the statute."  (Doc. 33 at 12).  Defendants further argue the re-recording of the deed of trust with the correct legal description was not material because Plaintiffs had already defaulted on the loan and left the property.  Again, however, Defendants present no authority that supports dismissal under the circumstances alleged here.

Plaintiffs allege that the re-recorded Deed of Trust was forged when Defendants used Plaintiffs' signatures from the original Deed of Trust, without their permission, to make it appear as though the re-recorded Deed of Trust was properly signed.  In addition,

1   Plaintiffs allege that many other recorded documents pertaining to the Note and Deed of
2   Trust, including assignments of interest and substitutions of trustees, were invalid
3   because the Deed of Trust on which they were based was itself invalid as a result of the
4   incorrect property description attached to it.  The Court finds Plaintiffs' allegations
5   sufficiently state a claim for a violation of A.R.S. § 33-420(A).  *See In re Mortgage*
6   *Electronic Registration Systems, Inc.*, 754 F.3d 772, 782 (9th Cir. 2014) (authorizing
7   claim for damages under A.R.S. § 33-420(A) based on allegedly false notice of trustee's
8   sale, notice of substitution of trustee and assignment of deed of trust).  Defendants'
9   request to dismiss Count Three will be denied.

### E.  Count Four – Payment/Discharge/Satisfaction

As stated above, Plaintiffs allege in Count Four that the Note has been paid by other sources and has no balance due.  They contend, therefore, that the Note and Deed of Trust are not in default and any foreclosure proceedings should be terminated.  Plaintiffs allege payments were made to Defendant OneWest by the FDIC pursuant to a "Shared Loss Agreement."  (Doc. 20 at 33).  Plaintiffs also allege other possible sources of payment toward the loan balance including "insurance payments, TARP funds, or other currently unknown sources."  (*Id.*).

Defendants argue Plaintiffs' cause of action in Count Four "is nothing more than a preposterous claim that they should own the property free and clear without paying for it."  (Doc. 33 at 13).  Defendants fail to acknowledge, however, that this precise claim was allowed to proceed in *Steinberger*.  In that case, the plaintiff alleged "that part of the loan has already been paid by the FDIC under a 'Shared-Loss Agreement.'"  *Steinberger*, 234 Ariz. at 144, 318 P.3d at 438.  The "Shared-Loss Agreement" in *Steinberger* involved the same parties and appears to be the same agreement at issue here.  *See id.*  The *Steinberger* court explained that "the agreement does appear to provide that, in exchange for OneWest's assumption of IndyMac Federal's loans, the FDIC would reimburse OneWest at 80% for any default in payments on those loans."  *Id.*  The plaintiff in *Steiberger* also alleged other sources of reimbursement including insurance

1 coverage but the Court found those to be "speculative and unsupported." *Id.* at 144-145, 318 P.3d at 438-439.   The Court ruled that "if it is true that the FDIC has already reimbursed OneWest for all or part of Steinberger's default, OneWest may not be entitled to recover that amount from Steinberger." *Id.* at 145, 318 P.3d at 439.

Defendants provide no reason for this Court to treat Plaintiffs' claim in Count Four any differently.  Defendants, however, address only the Shared Loss Agreement and fail to argue dismissal of the claim as it pertains to other sources of payments.[4]  Thus, the Court finds Plaintiffs have adequately stated a claim for discharge based on the alleged Shared Loss Agreement and other alleged sources of payment.

### F.  Count Five – Breach of Contract

Plaintiffs' breach of contract claim in Count Five alleges that Defendants breached the terms of the Note and Deed of Trust by pursuing a trustee's sale without complying with the foreclosure procedures set forth therein.  "To state a breach of contract claim, a plaintiff must allege that (1) a contract existed, (2) it was breached, and (3) the breach resulted in damages." *Steinberger,* 234 Ariz. at 140, 318 P.3d at 434 (citing *Thunderbird Metallurgical, Inc. v. Ariz. Testing Labs.,* 5 Ariz.App. 48, 50, 423 P.2d 124, 126 (1967) (internal citation omitted)).

Defendants argue that Plaintiffs' allegations in Count Five are vague in that they fail to identify which provision in the Deed of Trust was breached.  In addition, they argue Plaintiffs fail to sufficiently allege how they were injured by the breach.  The Court disagrees.

Plaintiffs allege Defendants failed to satisfy the conditions precedent to foreclosure.  Specifically, they claim Defendant OneWest failed to comply with the required procedures set forth in the Note and Deed of Trust, including a 30-day notice of default to the borrowers and a written notice of the default to the trustee.  They further allege that Defendants OneWest, U.S. Bank, and Ocwen breached the Note and Deed of

---

[4] Arguably, Plaintiffs' allegations of other sources of payments such as title insurance or TARP funds are speculative and unsupported.

- 14 -

1  Trust by seeking foreclosure pursuant to invalid assignments of interest. Defendants also
2  allege damages resulting from the breach, including "attempted wrongful foreclosure of
3  their home, substantial damage to credit, attorney's fees and costs, imminent danger of
4  quadruple liability on the Note and Deed of Trust." (Doc. 20 at 36)  In addition, they
5  allege "negative amortization of the Note, accruing interest, retention of loan
6  modification companies, and other damage." (*Id.*).  The Court finds Plaintiffs' allegations
7  in Count Five are sufficient to state a breach of contract claim. *See Steinberger,* 234
8  Ariz. at 141, 318 P.3d at 435 (finding that the plaintiff's allegations of failure to comply
9  with certain provisions of the note and deed of trust prior to initiating foreclosure
10 proceedings, and damages resulting therefrom, sufficiently alleged a claim for breach of
11 contract).

### G.  Count Six – Breach of Contract II

13 Plaintiffs' breach of contract claim in Count Six pertains to the first loan
14 modification agreement they received from Defendant OneWest.  Plaintiffs allege a
15 contract was formed when they accepted the terms of the modification agreement.  A
16 cover letter that came with the first modification agreement stated that "[t]o accept this
17 offer, you must sign and return both copies of the Modification Agreement to us in the
18 enclosed pre-paid envelope by 1/23/2010."  (Doc. 20 at 8) (citing Exhibit F to the
19 Amended Complaint).  Plaintiffs executed the agreement on January 15, 2010 and sent it
20 in as directed.  Plaintiffs contend that by accepting the offer under the terms provided, a
21 contract was formed.  They allege the contract was breached when, rather than comply
22 with the first agreement, Defendant sent a second modification agreement on January 28,
23 2010 that contained significantly worse terms.  Plaintiffs claim they were damaged in that
24 they did not obtain the benefits of the first agreement.

25 Defendants argue the claim should be dismissed because there was no contract.
26 They point to a provision in the first modification agreement that states, "I understand
27 that the Loan Documents will not be modified unless and until (i) I receive from the
28 Lender a copy of this Agreement signed by the Lender, and (ii) the Modification

1  Effective Date (as defined in Section 3) has occurred.  I further understand and agree that
2  the Lender will not be obligated or bound to make any modification of the Loan
3  Documents if I fail to meet any one of the requirements under this Agreement." (Doc.
4  20, Exh. F).   Defendants argue that because Plaintiffs never received a signed copy of
5  the first modification agreement, there was never a contract.  Defendants say nothing
6  about the cover letter in which Plaintiffs were explicitly instructed how to "accept this
7  offer," which they did.  Defendants present no argument and provide no authority to
8  demonstrate why Plaintiffs' acceptance of the offer did not create a binding contract.  Nor
9  do Defendants address the other two elements of a breach of contract claim: breach and
10 damages.

11 The Court finds Plaintiffs have sufficiently pled (1) the formation of a contract by
12 their acceptance of the "offer" presented by Defendant OneWest, (2) breach of the
13 contract based on OneWest's failure to comply with the terms of the first modification
14 agreement and instead propose a second modification agreement with less favorable
15 terms, and (3) damages based on their failure to receive the benefits of the first
16 modification agreement.  Defendants' request to dismiss this claim will be denied.

### H.  Count Seven - Fraud

As set forth above, Plaintiffs allege Fraud against Defendants OneWest, U.S. Bank and Ocwen based on the re-recorded Deed of Trust.  Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard for fraud claims in that it requires a plaintiff to "state with particularity the circumstances constituting fraud[.]" *See also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action.").  Fraud claims under Arizona law require nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth and his right to rely thereon; and (9) his

consequent and proximate injury. *See Jennings v. Lee*, 105 Ariz. 167, 461 P.2d 161, 164 (Ariz. 1969).

Here, the Court agrees with Defendants that Plaintiffs have failed to plead their fraud claim with particularity. Specifically, the Court finds Plaintiffs have failed to sufficiently allege that OneWest, the only served defendant that Plaintiffs claim directly committed the fraud, knew it was making a false representation when it re-recorded the Deed of Trust to correct the property description attached to it. Plaintiffs' conclusory allegation that it was done "to fool Plaintiffs and the public" is unsupported by facts. Additionally, Plaintiffs fail to allege OneWest intended Plaintiffs to act upon this alleged false representation in a manner reasonably contemplated. Plaintiffs' claim contains no facts in support of this element. For these reasons, the Court finds Plaintiffs have failed to state a claim for fraud in Count Seven. That count will therefore be dismissed.

**I. Count Eight – Trespass to Real Property**

Plaintiffs' claim in Count Eight alleges Trespass to Real Property. "A 'trespasser' is one who does an unlawful act or a lawful act in an unlawful manner to the injury of the person or property of another." *Yslava v. Hughes Aircraft Co.*, 1998 WL 35298580, at *13 (D.Ariz. June 29, 1998) (citing *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211, 216 (1958)). "With respect to trespass to real property, '[a] physical entry on the land is an essential element of a trespass.' " *Id.* (quoting *Brenteson Wholesale, Inc. v. Arizona Pub. Serv. Co.*, 166 Ariz. 519, 523, 803 P.2d 930, 934 (Az.Ct.App.1990) (citation omitted)). Arizona law imposes "liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so" *Taft v. Ball, Ball & Brosamer, Inc.*, 169 Ariz. 173, 176, 818 P.2d 158, 161 (App. 1991) (quoting Restatement (Second) of Torts § 158 (1965)); *see also* Restatement (Second) of Torts § 163 ("One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally

1 protected interest.").

2 Plaintiffs allege that Defendant OneWest and its agents went on the property while it was still owned by Plaintiff and without Plaintiffs' permission. Plaintiffs allege Defendant drilled a well that was insufficient for supplying water to the property. Plaintiffs contend the value of the property has been diminished as a result of the trespass.

Defendants argue the claim should be dismissed because OneWest entered the property "under the power of a completed foreclosure sale" and "because Plaintiffs abandoned the property prior to Defendants taking possession of it." (Doc. 33 at 20). Plaintiffs have alleged, however, that the foreclosure sale was invalid and, as a result, it did not deprive Plaintiffs of ownership of the property. Defendants essentially acknowledged that the foreclosure sale was invalid by recording on September 9, 2011, the "Affidavit of Trustee's Sale and Erroneous Recording of Trustee's Deed Upon Sale" for the purpose of nullifying the trustee's sale and returning the parties to the same position as before the sale. (Doc. 20, Exh. P). Plaintiffs allege they did not learn the sale was invalid, and that they still owned the Subject Property, until later when Plaintiff Buffington was contacted by the Department of Justice for failing to disclose ownership of the Subject Property in his bankruptcy proceeding. (Doc. 20 at 18).

The Court finds Plaintiffs allegations in Count Eight are sufficient to state a claim for Trespass to Real Property. The allegations are sufficient to show Defendants unlawfully entered the property knowing, or having reason to know, title was still held by Plaintiffs. The allegations demonstrate that despite not having Plaintiffs' permission to be on the property, Defendants dug a well that turned out to be an inadequate source of water and caused Plaintiffs to incur damages. Defendants' request to dismiss this claim will be denied.

**J.  Count Nine – Fair Debt Collection Practices Act**

Lastly, Plaintiffs allege a claim for unlawful debt collection practices under the FDCPA against Defendant Ocwen. Plaintiffs allege Ocwen, which began servicing

Plaintiffs' Note after it was alleged to be in default, acted as a debt collector under the FDCPA and engaged in improper debt collection practices.

Defendants argue the FDCPA does not apply to mortgage servicers such as Ocwen. Specifically, they contend that Ocwen is not a debt collector as defined by the FDCPA.

Under the FDCPA, a "debt collector" may not engage in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692d, 1692e. A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This definition does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id.* at § 1692a(6)(A). Nor does it include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." *Id.* at § 1692a(6)(F).

Defendants cite several cases for the proposition that mortgage servicers are not debt collectors under the FDCPA. (Doc. 33 at 21). While that is generally true, mortgage service companies may qualify as debt collectors when the debt being serviced is in default. *See De Dios v. International Realty & Investments*, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011) (explaining that under the FDCPA's legislative history a "debt collector does not include those 'mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing,'" and that "the exemption in § 1692a(6)(F)(iii) was intended to apply to mortgage companies and other parties 'whose business is servicing *current* accounts.'") (citations omitted)

- 19 -

(emphasis in original); *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012) (holding that "the definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of the acquisition.").

Here, Plaintiffs allege Defendant Ocwen is acting as a "debt collector" under the FDCPA. Plaintiffs further allege Defendant Ocwen began servicing the Note in September 2013, "well after the Note was alleged to be in default, and/or treated as though it were in default." (Doc. 20 at 40). Accordingly, Plaintiffs have alleged sufficient facts to fall outside the general rule that loan servicers are not debt collectors under the FDCPA. Defendants argue no other basis to dismiss Count Nine. Their motion will therefore be denied as to Count Nine.

**III. Conclusion**

Based on the foregoing discussion, the Court finds Count Seven must be dismissed for failure to state a claim. Defendants have failed to demonstrate that any of the remaining claims are subject to dismissal at this stage.

Accordingly,

**IT IS ORDERED** that Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 33) is **GRANTED** in part and **DENIED** in part. The motion is granted in that Count Seven is **dismissed**. The motion is denied as to the other eight counts.

Dated this 28th day of October, 2014.

_____
Diane J. Humetewa
United States District Judge